UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Oscar Javier Davalos,   Case No. 18-cv-1227 (ECT/ECW)

    Petitioner,

v.   **REPORT AND RECOMMENDATION**

R. Marques,
F.C.I. Sandstone Warden,

    Respondent.

---

This matter is before the Court upon Oscar Javier Davalos' Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Dkt. No. 1) and Motion Pursuant to Title 28 U.S.C. § 2241 (Dkt. No. 2). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that the Petition and Motion be denied and that this action be dismissed with prejudice.

## BACKGROUND

On September 30, 2008, Oscar Javier Davalos ("Petitioner" or "Davalos") was initially sentenced to an aggregated 215-month term (later reduced to an aggregated 210-month term) for Conspiracy to Distribute 5 Kilograms or More of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (*See* Dkt. No. 7-1, Ex. B at 2.) Petitioner has a

1

projected release date of October 24, 2021, via an early release under 18 U.S.C. § 3621(e) for successful completion of the BOP's Residential Drug Abuse Program. (*Id.*)

When the present Petition and Motion was filed, Davalos was incarcerated at the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone"). (Dkt. No. 1.) At all times relevant to his Petition and Motion, Petitioner was incarcerated at the Federal Correctional Institution located in Elkton, Ohio ("FCI-Elkton"). (*Id.*; Dkt. No. 7-1, Ex. D at 1.)

On June 2, 2016, the reporting officer was conducting rounds in the Charlie-Alpha ("CA") unit at FCI-Elkton, when he approached "cube 20" and saw an inmate hand a rolled-up paper package to Petitioner. (Dkt. No. 7-1, Ex. D at 1.) The reporting officer instructed Davalos to put down the package, which he did. (*Id.*) Inside the package was a green leafy substance, which tested positive for amphetamines using a two-step NIK polytesting kit. (*Id.* at 1, 4-6.)

On June 6, 2016, the investigating lieutenant delivered to Davalos a copy of Incident Report No. 2857802 charging Petitioner with a violation of Code 113, Possession of Narcotics.[1] (*Id.* at 1, 3.) The investigating lieutenant advised Davalos of his rights, and Davalos acknowledged that he understood his rights. (*Id.* at 3.) Davalos made the sole statement regarding the amphetamines found in his possession, that "[i]t was not mine." (*Id.*)

---

[1] Code 113 prohibits: "Possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff." 28 C.F.R. § 541.3, Table 1, *Prohibited Acts and Available Sanctions*.

On June 8, 2016, the Unit Discipline Committee ("UDC") conducted an initial hearing on the Incident Report. (*Id.* at 2.) During the hearing, Petitioner stated that when he came into his cube, his cellmate put something on his locker, and the reporting officer was walking by at the same time. (*Id.*) Davalos stated "it was not his." (*Id.*)

The UDC referred the matter to the Discipline Hearing Officer ("DHO")[2] for further hearing. (*Id.*) On June 8, 2016, the Petitioner was advised of his rights related to the DHO hearing, including:

1. The right to have a written copy of the charge(s) against you at least 24 hours prior to appearing before the Discipline Hearing Officer;

2. The right to have a full-time member of the staff who is reasonably available to present you before the Discipline Hearing Officer;

3. The right to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence in your behalf, provided institutional safety would not be jeopardized;

\* \* \*

6. The right to be advised of the DHO's decision, the facts supporting that decision, except where institutional safety would be jeopardized, and the DHO's disposition in writing . . . .

(*Id.*, Ex. E.) Petitioner acknowledged that he was advised of these rights. (*Id.*) Petitioner was also presented on June 8, 2016 with a Notice of Discipline Hearing. (*Id.*, Ex. F.) This notice advised Petitioner of his right to have a staff member present with him during

---

[2] A DHO is an independent hearing officer who is responsible for conducting disciplinary hearings and who has the authority to impose sanctions for incidents of inmate misconduct referred for disposition following the hearing before the UDC. The DHO must be an impartial decisionmaker and may not be the reporting officer, investigating officer or UDC member, a witness to the incident, or play any significant part in having the charge(s) referred to the DHO. *See* 28 C.F.R. § 541.8(b).

the hearing, the right to call witnesses and the right to present documentary evidence. Petitioner requested Officer R. Davis as a staff representative but declined to call any witnesses.[3] (*Id.*)

On June 23, 2016, DHO Timothy Montgomery conducted a hearing on Incident Report No. 2857802 and issued a written report on July 26, 2016, a copy of which was provided to Petitioner on February 9, 2017. (*Id.*, Ex. G at 1, 4.) Petitioner argued before the DHO that the incident report was false and made the following oral statement:

> That is not true; I don't know anything about the drugs. That was not mine. It's true I picked the packet up from my locker; I had no idea what was in the packet. I had just walked in the cubicle. No, I do not have any evidence or proof I had nothing to do with the drugs found in the packet I picked up from my locker.

(*Id.*, Ex. G at 2.) Petitioner did not call any witnesses, including the inmate who allegedly handed him the package, or present any documentary evidence. (*Id.*) The documentary evidence presented during the DHO hearing consisted of a report evidencing the positive test for amphetamines as it relates to the leafy green substance confiscated from Petitioner using a two-step NIK polytesting kit. (*Id.*)

Based on the "greater weight of fact/evidence" the DHO concluded Petitioner committed the prohibited act of possession of narcotics. (*Id.* at 3.) The DHO based this ruling on the following:

- The written statement by the reporting officer in his investigative report regarding his observations of an inmate handing a small package to Petitioner containing a leafy-green substance; and

---

[3]   Officer R. Davis appeared at the DHO hearing per Petitioner's request. (Dkt. No. 7-1, Ex. G at 1.)

4

- Evidence the leafy-green substance tested positive for amphetamines using the NIK test kit A and kit U.

(*Id.*) The DHO considered Petitioner's statement denying culpability, but discounted Petitioner's testimony given the reporting officer's observations of the package being handed to him, which was contrary to Petitioner's claims of merely picking up the packet from his locker. (*Id.*) In addition, the DHO noted Petitioner had failed to present any witnesses or other evidence challenging the reporting officer's observations. (*Id.*)

The DHO sanctioned Petitioner to the disallowance of 40 days good conduct time, disciplinary segregation for 60 days, and loss of visiting privileges for one year (sanction suspended pending 180 days clear conduct). (*Id.* at 4.) Petitioner unsuccessfully appealed the DHO's decision with the BOP's Regional and Central Offices. (Dkt. No. 1, Exs. C-D.)

## ANALYSIS

Petitioner argues that his right to due process of law was violated when the Bureau of Prisons ("BOP") reduced his time off for good behavior after finding that he violated prison rules. (Dkt. No. 2 at 5-7.) In particular, Petitioner reiterated his statement before the DHO that he just picked the packet up from his locker and had no idea what was inside when the reporting officer instructed him to put the packet down. (*Id.* at 5-6.) In addition, Petitioner asserted that the individual who was charged with him for the incident "took full responsibility for the packet." (*Id.* at 6.) In support of his due process argument, Petitioner also provided evidence of an inmate at a different charging facility, FCI-Sandstone, who was charged with possession of narcotics concealed on his person. (*Id.* at 6, Ex. E.) A different DHO purportedly found insufficient evidence to establish a

5

violation by the FCI-Sandstone inmate. (*Id.* at 6.) According to Petitioner, "[t]his fact clearly demonstrates that there is disparity in how the due process is conducted in relation to evidence issues as argued by Plaintiff . . . ." (*Id.*)

An inmate does not lose the right to due process of law simply because he is incarcerated. However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

The Supreme Court "has consistently held that some kind of hearing is required at some time before a person is finally deprived of his property interest," and applied that reasoning to deprivation of good time in response to a disciplinary proceeding where good time deprivation was provided for by statute. *Id.* at 557-58. Moreover, the Supreme Court has articulated a test for determining whether an inmate received adequate procedural due process after loss of time off for good behavior pursuant to a disciplinary decision: inmates are entitled to: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). Finally, due process requires that there must be "some evidence" supporting a guilty decision on a disciplinary charge brought against a prisoner. *Id.*; *see also Ragan v. Lynch*, 113 F.3d 875, 876 (8th Cir. 1997) ("When inmates are entitled to due process before being disciplined, they must receive: (1) advance written notice of the

6

charges; (2) an opportunity to present evidence in their defense; (3) a written statement by the fact finder of the reasons for the action; and (4) a decision supported by some evidence in the record.").

### A. Due Process

Petitioner received the due process required under *Hill*. The exhibits to his Motion include the written incident report setting forth the alleged violations, and his Motion refers specifically to his receipt of the incident report. (Dkt. No. 2 at 2, Ex. A.) Further, Petitioner does not contest that he received a disciplinary hearing, nor does he assert that the DHO as the factfinder failed to provide a written statement of the evidence relied upon and the reasons for the decision. That written statement is also attached to Petitioner's Motion as an exhibit. (*Id.*, Ex. B.)

Moreover, Petitioner does not claim was unable to submit witnesses (including the inmate who allegedly handed him the package and who Petitioner claims took full responsibility for the package) or any other evidence at the hearing. The record shows that he was repeatedly notified of his right to request witnesses and to present documentary evidence. Indeed, in his statement to the DHO Petitioner stated, "No, I do not have any evidence or proof I had nothing to do with the drugs found in the packet I picked up from my locker." (Dkt. No. 7-1, Ex. G at 2.) Accordingly, the Court finds that Petitioner was afforded sufficient procedural due process.

### B. Sufficiency of the Evidence

As stated previously, the due process clause also requires that a prison disciplinary board establish its factual findings at the hearing according to the standard of "some evidence." *Goff v. Dailey*, 991 F.2d 1437, 1442 (8th Cir. 1993). The Supreme Court has described the "some evidence" standard as follows:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is ***any evidence*** in the record that could support the conclusion reached by the disciplinary board.

*Hill*, 472 U.S. at 455-56 (emphasis added).

The power of federal courts to review the decision of the prison disciplinary hearing officer is limited because "[t]he federal courts are not part of the appellate process for prison disciplinary proceedings." *Toombs v. Hicks*, 773 F.2d 995, 997 (8th Cir. 1985) (citing *Courtney v. Bishop*, 409 F.2d 1185, 1187 (8th Cir. 1969)). It is important to note that the role of this Court is not to reweigh the evidence presented as part of the disciplinary process. *Hill*, 472 U.S. at 455. The evidentiary requirement in reviewing prison disciplinary actions is met even when the evidence "might be characterized as meager;" it simply must not be "so devoid of evidence as to make the findings of the institution without support or otherwise arbitrary." *Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011) (quoting *Hill*, 472 U.S. at 457); *see also Gomez v. Graves*, 323 F.3d 610, 612 (8th Cir. 2003) ("[C]ourts are to give deference to prison officials and should intercede in prison discipline cases only when the sanctions are wholly unsupported by the record"). "'Some evidence' can include statements or testimony, a written account of the incident, or the incident report." *Pinson v. Warden*

*FMC Rochester*, No. 17-CV-3790 (PJS/FLN), 2018 WL 3659017, at *3 (D. Minn. Aug. 2, 2018). "***Even when there is substantial evidence to the contrary***, the [disciplinary] committee may find a guard's report to be credible and therefore take disciplinary action." *Hrbek v. Nix*, 12 F.3d 777, 781 (8th Cir. 1993) (emphasis added); *see also Johnson v. Outlaw*, No. 2:11CV00128-BD, 2012 WL 786259, at *3 (E.D. Ark. Mar. 9, 2012), *aff'd*, 489 F. App'x 144 (8th Cir. 2012) (upholding disciplinary conviction related to possession of a cell phone despite confession of another inmate that supported dismissal of charge).

Here, the record contains sufficient evidence to support that Petitioner was in possession of narcotics. While Petitioner asserts that he merely discovered the package in his locker without knowledge of its contents and that he was not handed the narcotics by another inmate, as claimed in the incident report, he presented no evidence outside of his own assertions to counter the incident report. The incident report itself is "some evidence" that Petitioner was in possession of narcotics since it states that the reporting officer saw an inmate hand Petitioner a packet containing a green leafy substance that NIK polytesting subsequently established was amphetamine. *See Hill*, 472 U.S. at 456; *see also Triplett v. Fondren*, No. 07-2343 (JRT/RLE), 2008 WL 1819183, at *5 (D. Minn. Apr. 23, 2008) (upholding discipline received for possession of marijuana after a NIK test); *see also Nichols v. Von Blanckensee*, No. 18 CV 754 (VB), 2018 WL 4387558, at *3 (S.D.N.Y. Sept. 14, 2018) ("Because the DHO relied, in part, on the NIK test results when finding petitioner guilty of possession of narcotics, and because the

9

incident report, memorandum, and petitioner's hearing testimony provided the DHO with information regarding the test's reliability, the 'some evidence' standard was met.").

In addition, Petitioner's assertion that he did not know what was in the package is of no avail. Petitioner admitted that he possessed the package in question, and that admission was sufficient evidence for the DHO to conclude that he was guilty of the offense of which he was charged, as Code 113 does not include any scienter requirement. *See Triplett*, 2008 WL 1819183, at *5; *Tomlinson v. Caraway*, No. CV 14-2094-VBF KK, 2014 WL 4656429, at *3 (C.D. Cal. July 16, 2014), *R.&R. adopted*, No. LA CV 14-02094-VBF, 2014 WL 4656432 (C.D. Cal. Sept. 16, 2014) ("There is no indication that Code 113 has such a specific scienter requirement."). Moreover, the assertion in his appeal to the BOP (Dkt. No. 2, Ex. C) and before this Court that other inmate involved in the incident accepted responsibility for the narcotics at issue does not cut against a finding that the DHO decision is supported by substantial evidence. Petitioner presented no evidence to this Court supporting this assertion or even what the inmate meant by way of taking responsibility for the narcotics he handed to Petitioner.[4] More importantly, it

---

[4] This Court notes that the BOP's decision is supported by "some evidence" even assuming that the testimony of the other inmate would corroborate Petitioner's claims. In *Hill*, *supra*, a prison disciplinary board found an inmate guilty of assaulting another inmate based solely on the testimony and written report of a prison guard who had not witnessed the incident. 472 U.S. at 456. The prison guard only heard commotion and saw the suspects fleeing the area. *Id.* The victim also provided the disciplinary board a written statement, asserting that the suspects had not caused his injuries. *Id.* at 448. The Court found the disciplinary board's finding of guilt based on this evidence enough to satisfy the Due Process Clause because "[a]lthough the evidence . . . might be characterized as meager, . . . the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* at 457. Similar to *Hill*, given the reporting officer's observations in this case that he observed the inmate hand Petitioner the package (as contained in his report), the other inmate's alleged

does not negate Petitioner's possession of the narcotics. Accordingly, Petitioner received due process under the applicable standard of "some evidence."[5]

## RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1), and Motion Pursuant to Title 28 U.S.C. § 2241 (Dkt. No. 2) be **DENIED**; and

2. This action be **DISMISSED WITH PREJUDICE**.

DATED: October 3, 2018                                  *s/Elizabeth Cowan Wright*
                                                        ELIZABETH COWAN WRIGHT
                                                        United States Magistrate Judge

---

assertions of what occurred does not change this Court's decision that the finding of Petitioner's guilt is based on some evidence for the purposes of satisfying due process.

[5]      Petitioner also argued that the lack of due process in this case is evident by the fact that a different inmate (at a different institution) was found not guilty of possession of a narcotic by a different DHO, even though the narcotic was allegedly found on his person. (Dkt. No. 2 at 6.) However, the interest protected by the Constitution is to a hearing ensuring that the inmate has an opportunity to persuade an impartial decisionmaker, who must give written justification for his decision, that discipline is not warranted. *See Hrbek*, 12 F.3d at 781. This Court finds that Petitioner was adequately given this opportunity. To the extent Petitioner is making an Equal Protection claim, such a claim is without merit because he has not shown that he is similarly situated to the inmate who had his charge of possession considered at a different institution—FCI-Sandstone. *See Bogren v. Minnesota*, 236 F.3d 399, 408 (8th Cir. 2000), *cert. denied*, 534 U.S. 816 (2001) ("In general, the Equal Protection Clause requires that state actors treat similarly situated people alike."); *see generally*, *Beaulieu v. Ludeman*, No. 07-CV-1535 JMR/JSM, 2008 WL 2498241, at *13 (D. Minn. June 18, 2008) (collecting cases) ("Detainees at one facility or unit are not considered to be "similarly-situated" to detainees at other facilities or units for Equal Protection purposes.") Petitioner has also failed to provide any evidence regarding the underlying facts of the charges against the inmate at FCI-Sandstone so as to allow the Court adequately determine whether these inmates are truly similarly situated for the purposes of Equal Protection.

## **NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).